## ALLEGHANY CORP. v. JAMES FOUNDATION OF NEW YORK, Inc.

United States District Court
S. D. New York.
May 13, 1952.

White & Case, New York City (J. Adam Murphy, Haliburton Fales, II, New York City, of counsel), for plaintiff.

Milbank, Tweed, Hope & Hadley, New York City, for defendant.

IRVING R. KAUFMAN, District Judge.

Defendant moves for an order pursuant to Rule 45(b) and (d) (1) of the Federal Rules of Civil Procedure, 28 U.S.C.A. quashing a subpoena duces tecum upon a pre-trial examination on the ground that it is unreasonable and oppressive. By affidavit, defendant's attorney summarizes his objection by describing the subpoena as one calling upon the defendant and J. K. Olyphant, Trustee "to produce an unspecified number of documents, covering an indeterminate period, and dealing with matters which have not the remotest bearing on the issue."

Plaintiff instituted the action reserving to itself the right to elect between specific performance and damages arising from an alleged breach of contract. The complaint states that early in February, 1951 defendant, in agreement with William Wyer and William H. Pflugfelder, offered to sell two blocks of The Western Pacific Railroad stock to a purchasing group of six members one of whom was plaintiff. The alleged agreed price was $13,365,789.25. The nub of the amended complaint is that although the purchasing group was ready, willing and able to comply with the terms of the alleged purchase agreement, defendant has failed and refused to abide by it. It complains that the stock in question constitutes 28.7% of the voting stock of Western Pacific, and "[a]n equivalent number of shares would be difficult to purchase in the open market under current conditions. The

* * * stock has a unique value which cannot be adequately measured in money damages." The answer denied the material allegations of the amended complaint, except that it admitted defendant owned 28.7% of the voting stock, and it alleged defect of parties and the statute of frauds among its defenses. It further alleged that defendant granted Wyer and Pflugfelder the exclusive and non-transferable right to produce purchasers for the stock, and that they did not produce such purchasers.

Olyphant, a trustee of defendant, was examined by plaintiff on March 6, 1952. On February 28, 1952, Olyphant was served with a subpoena duces tecum. At the time of the examination, defendant's attorney objected to certain questions and to the production of certain documents, all of which dealt with the fate of the stock after the alleged agreement aborted. By order of Judge Goddard, dated April 8, 1952, the objections were overruled and Olyphant's examination was ordered continued. Thereafter, plaintiff on April 23, 1952 served upon Olyphant a further subpoena duces tecum. It is to this subpoena that the instant motion is addressed.

The subpoena calls for the production of documents concerning the following matters:

1. Defendant's control over the management of Western Pacific.

2. Defendant's participation in stockholders' meetings, conferences for the reelection of Western Pacific personnel and the discussion of Western Pacific policy.

3. Defendant's employment of expert advisors on the management of the railroad.

4. Defendant's control over the nomination and election of railroad directors.

5. The capitalization of the railroad, voting rights and defendant's share in those capital stock voting rights.

■ In support of the motion to quash, defendant emphasizes the appropriate rule governing a problem such as this: quashal will lie if the documents called for are irrelevant or immaterial to the issue before the Court. Chase Nat. Bk. of City of New York v. Portland Gen. Elec. Co., D.C.S.D. N.Y.1942, 2 F.R.D. 484; United States v. Aluminum Co. of America (two cases) D.C. S.D.N.Y.1939, 1 F.R.D. 57, 62; 5 Moore's Federal Practice, Par. 45.05 (2d Ed.).

Defendant furthermore bases its motion on charges that the documents are not specifically described and the subpoena is not limited in time. Plaintiff's answer to these contentions is that all five categories of documents are relevant to show the unique character of the blocks of stock as providing defendant with substantial control of the Western Pacific. The documents, so plaintiff states, will prove defendant's exercise of this control.

What has all this to do with the breach of contract which is the gravamen of the complaint? The connection, plaintiff says, is that uniqueness of the stock will be an indispensable element of its proof if it sues for specific performance. Indeed, the plaintiff went further than this in its oral argument and supplemental brief, and it now appears that plaintiff has, at least for the purposes of this motion, elected to sue for specific performance. Page 1 of its supplemental brief states: "This is an action for specific performance of a contract." No mention is made of damages. Page 2 of the brief reads in part:

"These two blocks of stock are unique and since they could not be purchased in any market there is no adequate measure of damages for breach of the alleged contract. Under these circumstances specific performance should be decreed and a court of equity which ordinarily will not take jurisdiction of a breach of contract to sell personal property will take jurisdiction and give specific performance."

I assume that this is an action for specific performance, the alternative plea for damages notwithstanding. Absent that assumption, proof of uniqueness would not be the indispensable element of proof which plaintiff claims it is.

Paragraph 12 of the amended complaint recites the difficulty of purchasing this quantity of stock in the open market. It further alleges that the stock has unique value. I read these neighboring sentences as complementary. Difficulty of purchase and other factors indicating uniqueness will apparently be relied upon by plaintiff in its attempt to get specific performance. The power to control which is presumably lodged in the stock is one of those factors which will confirm or deny its alleged uniqueness. To furnish proof in support of its prayer for specific performance, it would appear that plaintiff will have to prove more than its mere scarcity in the market. Hence it is that the control characteristics are of such vital importance to plaintiff's case. Examination upon this matter is therefore material. Fletcher Cyclopedia Corporations, Permanent Edition, Vol. 12, Section 5634.

I do not believe, however, that examination should be permitted to probe the intricate and what at this time seem to be irrelevant reaches of defendant's *modus operandi* with these securities. The power to control vested in the stock can certainly be discovered without dissecting the anatomy of defendant's behavior, which is what plaintiff really seeks in its present subpœna. At this time, examination of Olyphant will be permitted on the narrow question of the existence rather than defendant's exercise of the power to control.

The time provided in the subpœna shall extend from the present back to April 1943 when, as plaintiff's counsel attests, the James Estate took ownership of the stock. The five categories specified in the subpœna sufficiently and reasonably define the scope of the items sought, hence the motion is not granted on grounds of their obscurity.

The motion is granted as to all five provisions of the subpœna duces tecum with leave to plaintiff to serve in conformity with this opinion a new subpœna with respect to items 1, 2, 4 and 5 herein. It shall be limited in its requests as above directed and it shall eliminate item 3 in toto. In the event plaintiff abandons its present alternative demand for specific performance, plaintiff will pay as taxable disbursements to defendant the cost of any documents produced pursuant hereto.

Settle order.